Filed 7/2/13  P. v. Tyler CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B240499 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA385927) |
| v. | |
| TOMEKO SHANE TYLER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Laura F. Priver,  Judge.  Affirmed.

Sarvenaz Bahar, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Seth P. McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## SUMMARY

Defendant Tomeko Shane Tyler appeals from a judgment entered after a jury convicted him of one count of unlawful driving or taking of a vehicle in violation of Vehicle Code section 10851, subdivision (a) and one count of evading an officer with willful disregard for safety of persons and property in violation of Vehicle Code section 2800.2, subdivision (a).  After the jury deadlocked on a felony charge of resisting an executive officer in the performance of his duties in violation of Penal Code section 69, Tyler pled "no contest" to a misdemeanor charge of resisting a police officer in violation of Penal Code section 148, subdivision (a)(1).  On appeal, Tyler requests that we conduct an independent review of the trial court's in camera *Pitchess*[1] hearing, contends that the trial court erred in failing to stay under Penal Code section 654 his sentence on the section 148 resisting a police officer charge, and contends that the trial court erred in calculating his good conduct credits under Penal Code section 4109.  We affirm.

## FACTS AND PROCEEDINGS BELOW

On June 26, 2011, at approximately 6:10 p.m., Los Angeles Police Officers Josue Merida and Carlos Lizarraga were on patrol in uniform in a marked police car.  The officers noticed a "red colored Acura Integra" headed in their direction and, as it passed by, they saw Tyler in the driver's seat appear "to attempt to conceal himself looking away, looking down."  The officers made a U-turn to follow the Acura.  Tyler made a quick right turn and failed to stop at a red light, prompting the officers to accelerate and give chase.  As the officers entered the Acura's license plate number into their computer, Tyler "conducted a U-turn in front of [the officers] speeding away screeching tires."  Tyler failed to stop for another stop sign as the officers sped up "trying to catch [Tyler]."  Tyler accelerated away when the officers activated their lights and sirens.  The officers called for "backup and a helicopter."

The officers learned though their computer that the Acura was stolen.  As the pursuit continued, Tyler drove through red lights and stop signs without stopping or

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

2

slowing down, drove at speeds of 35-40 miles per hour, swerved in and out of traffic, nearly hit pedestrians and forced other cars to pull off to the side or make sudden movements to avoid being hit.

Tyler turned into a parking lot that dead ended and slowed down. While the Acura was still moving, Tyler opened the driver door, exited the car and began running away on foot.[2] The officers exited their patrol car and began pursuing Tyler on foot. Tyler ran through an opening in a nearby chain-link fence as the officers yelled that they were police and for him to stop. Tyler led the officers over railroad tracks, across streets, and over a wall.

Officer Merida, along with another officer, Officer Vasquez, who had arrived at the scene, were able to take Tyler "down to the floor." Officer Vasquez put his body weight on Tyler as Officer Merida attempted to gain control of appellant's arms, which were underneath Tyler. Officer Lizarraga attempted to control appellant's legs as appellant kicked. Officer Merida told appellant to "stop resisting" as he attempted to pull appellant's arm out from underneath him. Appellant "[k]ept kicking his legs back not complying with letting go of his arms." Pursuant to department training, Officer Merida administered a punch to appellant's face "to distract 'em [sic]." Appellant kicked Officer Lizarraga in the legs, which caused him to fall back. Officer Merida punched appellant two more times and was able to distract appellant enough for Officer Vasquez "to pull his left arm from underneath him, put it in his – on the [appellant's] lower back. [Officer Vasquez] gained control of [appellant's] left arm then [Officer Merida] was able to pull [appellant's] right arm from underneath him and at that point Officer Vasquez was able to place handcuffs on [Tyler]." Tyler was taken into custody.

The jury convicted Tyler of two felony counts: in count one for unlawful driving or taking of a vehicle in violation of Vehicle Code section 10851, subdivision (a), and in count two for evading an officer with willful disregard for safety of persons and property in violation of Vehicle Code section 2800.2, subdivision (a). The jury deadlocked on

---

[2] The Acura came to a stop on a dirt embankment that leads to a chain link fence.

3

count three, charging a felony for resisting an executive officer in the performance of his duties in violation of Penal Code section 69, and the court declared a mistrial. In bifurcated proceedings, Tyler admitted the prior conviction allegations and pled "no contest" to a misdemeanor charge of resisting a police officer in violation of Penal Code section 148, subdivision (a)(1).

The trial court sentenced Tyler to five years and four months in state prison calculated as follows: two years doubled due to the prior strike for count 2; one-third the mid-term of 24 months doubled due to the prior strike for count 1, to be served consecutive to count 2; and six months for count 3, to be served concurrent with his other counts. The court imposed various fines and assessments. The trial court also awarded Tyler 361 days of presentence custody credits, consisting of 241 days of actual custody and 120 days of good conduct credit.

Appellant filed a timely notice of appeal.

## DISCUSSION

On appeal, Tyler requests that we conduct an independent review of the trial court's in camera *Pitchess* hearing. He also contends that the trial court erred when it failed to stay under Penal Code section 654 his sentence on the section 148 resisting a police officer charge, and when it failed to calculate his good conduct credits under revised Penal Code section 4019.

## I. *Pitchess* Motion

Before trial, Tyler made a *Pitchess* motion for discovery of all "complaints . . . [of] fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, . . . false arrest, perjury, dishonesty, writing of false police reports, writing of false police reports to cover up the use of excessive force, planting of evidence, false or misleading internal reports including but not limited to false overtime or medical reports, and any other evidence of misconduct amounting to moral turpitude . . . against Officer(s) Lizarraga (#38008), Merida (#37596), [and] Vasquez (#39428)."

The trial court granted in camera review of the records of all three officers for dishonesty.[3] The court ordered disclosure of relevant complaints.

On appeal, Tyler requests that we independently review the in camera proceedings to determine whether the trial court properly exercised its discretion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1232; *People v. Wycoff* (2008) 164 Cal.App.4th 410, 414-415.)

The record indicates that the court complied with the procedural requirements of a *Pitchess* hearing. There was a court reporter present and the custodian of records was sworn prior to testifying. (*People v. Mooc*, *supra*, 26 Cal.4th at pp. 1228-1230, fn. 4; *People v. White* (2011) 191 Cal.App.4th 1333, 1339-1340.) The custodian of records complied with the requirement to bring all the relevant personnel records and submit them for the court to review and determine which documents were relevant. (*People v. Wycoff*, *supra*, 164 Cal.App.4th at pp. 414-415.)

We have conducted an independent review of the transcript and the documents, and find no error occurred during the *Pitchess* hearing in chambers.

## II.  Section 654

Tyler contends that the trial court erred by not staying his concurrent sentence on count 3 for resisting arrest because it was part of the same course of conduct as his conviction in count 2 for evading an officer with willful disregard for safety of persons and property, arguing that he "had but one intent and objective and that was to avoid capture by the police."

By letter brief filed on June 20, 2013, the Attorney General's office argued that Tyler waived any section 654 argument when he pled no contest to count 3 and agreed to the six-month concurrent sentence he now challenges. We agree that Tyler has waived any argument that section 654 requires that his sentence on count 3 be stayed.

---

[3] Tyler initially also raised on appeal a claim that the trial court erred in denying the portion of his *Pitchess* motion seeking discovery of complaints against the officers alleging unauthorized use of force; however, he withdrew this argument in his Reply Brief, conceding that it was waived by his plea on the resisting arrest charge.

Section 654 provides in pertinent part: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) California Rules of Court, rule 4.412(b) provides: "By agreeing to a specified prison term personally and by counsel, a defendant who is sentenced to that term or a shorter one abandons any claim that a component of the sentence violates section 654's prohibition of double punishment, unless the claim is asserted at the time the agreement is recited on the record." (See *People v. Hester* (2000) 22 Cal.4th 290.)

Here at sentencing, the trial court stated to Tyler's counsel, "With regard to the other count he's going to plead to a misdemeanor, be given 6 months concurrent?" and Tyler's counsel replied, "Yes, Your Honor." The trial court then told Tyler "I'm going to sentence you to 6 months in the county jail and run it concurrent with the other sentence. Do you agree to that?" and Tyler responded, "Yes." Accordingly, Tyler waived any claim that the sentence violated section 654.

Moreover, were we to address Tyler's section 654 claim, we would find it to be without merit. The purpose of section 654 is to ensure that punishment is commensurate with a defendant's culpability. (*People v. Meeks* (2004) 123 Cal.App.4th 695, 705.) Courts have construed section 654 broadly, restricting punishment for multiple offenses committed with a single objective. In *Neal v. State of California* (1960) 55 Cal.2d 11, 19, the Supreme Court held where a course of conduct violates more than one statute but is part of an indivisible transaction with a single intent or objective, section 654 applies, and the trial court may impose only one sentence. But where a defendant entertains multiple criminal objectives that are "independent and not incidental to each other," the court may impose separate punishment even where the violations were otherwise part of an indivisible course of conduct. (*People v. Sok* (2010) 181 Cal.App.4th 88, 99.) "It is the defendant's intent and objective that determines whether the course of conduct is indivisible . . . . '"[i]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, the defendant may be found to have harbored

6

a single intent and therefore may only be punished once."'" (*People v. Le* (2006) 136 Cal.App.4th 925, 931; see also, *People v. Alford* (2010) 180 Cal.App.4th 1463, 1466.)

If section 654 applies, the proper procedure is to impose a concurrent term and then stay it. (*See People v. Hernandez* (2005) 134 Cal.App.4th 1232, 1238-1239.) Where a court imposes a concurrent term but does not stay the term, we infer the court found defendant had multiple intents or objectives in committing the offenses and rejected the applicability of section 654. (*People v. Alford*, *supra*, 180 Cal.App.4th at p. 1466.) Where a court erroneously fails to stay a concurrent term in violation of section 654, it acts in excess of its jurisdiction and the sentence is unauthorized. (*People v. Cuevas* (2008) 44 Cal.4th 374, 380, fn. 3.)

The trial court has broad latitude in determining whether section 654 applies in a given case. (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1564.) The determination whether the defendant harbored more than one intent or objective is a factual one that will not be reversed on appeal unless unsupported by substantial evidence. (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) We review the trial court's factual finding, whether implicit or explicit, in the light most favorable to the prevailing party, presuming the existence of every fact the factfinder could reasonably deduce from the evidence. (*People v. Tarris* (2009) 180 Cal.App.4th 612, 620.)

Here, after exiting the vehicle and running, Tyler was brought down and had three officers trying to control him. Tyler repeatedly kicked his legs at officers, knocking Officer Lizarraga down in one instance, before officers were able to handcuff him. Viewed in the light most favorable to the prosecution, this evidence supports a finding that Tyler harbored a separate objective, to harm officers, that was independent of and not merely incidental to his objective of fleeing.[4]

---

[4] We do not rely on Respondent's contention that section 654 did not apply because of the multiple victims exception, but note that neither count involves a crime of violence for purposes of the multiple victim exception to section 654. (*See People v. Hall* (2000) 83 Cal.App.4th 1084, 1089.)

7

Accordingly, Tyler was properly sentenced to a concurrent term of six months on count 3 so that even if his claim had not been waived, it would not have prevailed.

## III. Section 4109

Tyler argues that the trial court erred in calculating his good conduct credits under Penal Code section 4109 because the statute is ambiguous and, in order to give meaning to each part, subdivision (h) must be interpreted to mean that inmates such as Tyler,--who committed an offense prior to October 1, 2011 but who are in pre-sentence custody on or after October 1, 2011--should earn good conduct credits at the enhanced rate provided for in the amended statute for presentence custody on or after October 1, 2011. By this calculation, Tyler contends he should have received an additional 72 days of good conduct credit.

Before October 1, 2011, defendants in local custody were eligible to earn good conduct credit at a rate of two days for every four days of actual custody. (former Pen. Code, § 4019, subd. (f).) Pursuant to an amendment which was operative on October 1, 2011, the accrual rate for good conduct credit changed to two days for every two days of actual custody. (Pen. Code, § 4019, subd. (f).) The statute, as amended, also states: "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to [local custody] for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011 shall be calculated at the rate required by the prior law." (Pen. Code, § 4019, subd. (h).) Despite this express and seemingly unambiguous language making clear that the Legislative did not intend it to apply retrospectively, Tyler argues that the second sentence of subdivision (h) implicitly suggests that the Legislature intended for the new calculation to apply for days in custody on or after October 1, 2011 for inmates who committed their offense prior to October 1, 2011. We disagree.

The first sentence of subdivision (h) plainly reflects that the Legislature intended the new conduct credit accrual rate in the amendment to apply only to defendants who committed their offense on or after October 1, 2011. The second sentence of subdivision (h) does not explicitly state that the new conduct credit accrual rate applies to defendants,

8

like Tyler, who committed their offense before October 1, 2011 but are in local custody on or after October 1, 2011. To harmonize the two sentences, we would interpret the second sentence as an attempt to clarify that those defendants, like Tyler, who committed an offense before October 1, 2011 and are in local custody on or after October 1, 2011, earn conduct credit under the accrual rate provided by the "prior law."

At least two other courts have likewise found it possible to read the two sentences without creating ambiguity. In *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, the court held: "to read the second sentence" of Penal Code section 4019, subdivision (h) as stating that a defendant earns day-for-day credit after October 1, 2011, no matter when the crime was committed, "renders meaningless the first sentence. This we cannot do." Rather, this court concluded: "[S]ubdivision (h)'s first sentence reflects the Legislature intended the enhanced conduct credit provision to apply only to those defendants who committed their crimes on or after October 1, 2011. Subdivision (h)'s second sentence does not extend the enhanced conduct credit provision to any other group, namely those defendants who committed offenses before October 1, 2011, but are in local custody on or after October 1, 2011. Instead, subdivision (h)'s second sentence attempts to clarify that those defendants who committed an offense before October 1, 2011, are to earn credit under the prior law. However inartful the language of subdivision (h), we read the second sentence as reaffirming that defendants who committed their crimes before October 1, 2011, still have the opportunity to earn conduct credits, just under prior law. [Citation.] To imply the enhanced conduct credit provision applies to defendants who committed their crimes before the effective date but served time in local custody after the effective date reads too much into the statute and ignores the Legislature's clear intent in subdivision (h)'s first sentence. [¶] . . . [¶] We recognize the Legislature in drafting subdivision (h)'s second sentence used the word 'earned.' And it is impossible to earn presentence credits for an offense that has not yet been committed. But reading the first and second sentences together, the implication is the enhanced conduct credit provision applies to defendants who committed crimes before October 1, 2011, but who served time in local custody after that date. To isolate the verbiage of the second sentence

9

would defy the Legislature's clear intent in subdivision (h)'s first sentence and contradict well settled principles of statutory construction. In conclusion, we find the enhanced conduct credit provision applies *only* to those defendants who committed their crimes on or after October 1, 2011." (*People v. Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 51, 52, fn. omitted.)

Similarly, the court in *People v. Ellis*, *supra*, 207 Cal.App.4th at p. 1553, held: "In our view, the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011. [Citation.] The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits. So read, the sentence is not meaningless, especially in light of the fact the October 1, 2011, amendment to [Penal Code] section 4019, although part of the so-called realignment legislation, applies based on the date a defendant's crime is committed, whereas [Penal Code] section 1170, subdivision (h), which sets out the basic sentencing scheme under realignment, applies based on the date a defendant is sentenced."

Tyler argues that the reasoning of *Rajanayagam* and *Ellis* are contrary to the Supreme Court decision in *People v. Brown* (2012) 54 Cal.4th 314. Tyler notes that *Brown* held that a different, prior amendment applied prospectively and defined prospectively as "meaning that qualified prisoners in local custody first became eligible to earn credit for good behavior at the increased rate beginning on the statute's operative date." (*Brown*, *supra*, 54 Cal.4th at p. 318.) The amendment in *Brown*, however, did not contain an express provision regarding prospective application in contrast to the current amendment at issue in this case.

We likewise find unpersuasive Tyler's other arguments distinguishing *Rajanayagam* and *Ellis* and finding support for his position in *Brown.*

Tyler's credits were thus correctly calculated under former section 4019, subdivision (f). As Tyler spent 241 days in actual custody, he was entitled to no more than the 120 days of good conduct credit he received.

10

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

CHANEY, J.

We concur:

ROTHSCHILD, Acting P. J.

JOHNSON, J.