Filed 5/13/14  P. v. Pitt CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>THOMAS LEO PITT,<br><br>Defendant and Appellant. | F065395<br><br>(Super. Ct. No. BF138583A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John S. Somers, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted Thomas Leo Pitt (appellant) of continuous sexual abuse of his daughter, N.,[1] a child under the age of 14 (Pen. Code, § 288.5, subd. (a))[2], but acquitted

---

[1]    We refer to certain persons by their abbreviated names in accordance with our Supreme Court's policy regarding protective nondisclosure of identity.  No disrespect is intended.

[2]    All further statutory references are to the Penal Code unless otherwise stated.

him of continuous sexual abuse of A., a child under the age of 14 (§ 288.5, subd. (a)), and of committing a lewd and lascivious act on T., a child under the age of 14 (§ 288, subd. (a).) The jury found not true the allegation that appellant committed an offense against more than one victim. The trial court sentenced appellant to the upper term of 16 years in state prison.

We reject appellant's challenge to the trial court's denial of a motion to sever the count concerning N. from the remaining counts and to the trial court's imposition of the upper term. We grant his request and review the materials considered by the trial court in the in camera *Pitchess*[3] motion, but find no error.

## *STATEMENT OF THE CASE*

This case arises out of appellant's alleged sex crimes against N., A. and T. Although he was acquitted of the charges involving A. and T., we include the evidence related to those counts as it is relevant to appellant's joinder claim.

### *Child N.*

Appellant's daughter, N., was born in February of 1995. Appellant began touching her inappropriately when she was six years old. He rubbed her vagina with his penis and ejaculated. He also orally copulated her "[j]ust about everyday" between the ages of six and 10. He continued "rubbing" her until she was 12 years old. He had vaginal intercourse with her for the first time when she was 10 years old. He did not vaginally penetrate her again with his penis until she was 12, at which point it became a regular daily occurrence for two and one-half years. The number of times appellant sexually abused N. was in the hundreds.

Appellant also had N. orally copulate him on a regular basis. N. did not recall when that started, but knew it was before she was 10 years old. He ejaculated in her mouth when she was 12 or 13 years old, although he did that only a few times. N. did not always live with appellant between the ages of six and 12, because, at some point, she

---

**3**      *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

2.

and her mother moved out. N. continued to visit and stay with appellant during that time. When N. was 12, she saw appellant at least four times a week, and he had vaginal intercourse with her almost every time during those visits. Appellant continued to penetrate N. with his penis until she was 14 years old, even after appellant and her mother reconciled. When N. was 14 years old, appellant and her mother split up again, and N. did not see appellant too often after that.

At age 15, N. told her boyfriend about the abuse. She later reported the abuse to law enforcement. She did not report the abuse earlier because she was "afraid" of "[l]ots of things. I was afraid that if my dad had left, our family would struggle. I was afraid of what people would think of me."

With the assistance of Sergeant Scott Lopez, N. made two pretext phone calls to appellant, who lived in Las Vegas at the time. The two calls were made on the same day, four to five hours apart.

During the first call, which was played for the jury, N. said she had broken up with her boyfriend and wanted to move in with appellant, but that she didn't want "us to have sex anymore." Appellant promised, stating she didn't have to worry because "[t]hat's done with." When N. asked if he felt bad "for any of those things that you did to me," appellant said he would talk to her later about that because he did not feel comfortable. N. asked that he at least apologize for what he did to A., as A. had told N. what appellant had done. Appellant insisted that he hadn't done anything to A. Appellant deflected a question of whether he had molested "[C.]" N. said that he could at least apologize and make her feel better and appellant said "I already did." When N. asked "[w]hen," appellant said "I said I was sorry. It's like you're trying to get me to confess." N. said that maybe she was looking for a confession, to which appellant asked her to call him later.

When N. made her second call, which was also played for the jury, she said she "really" needed to talk to appellant. Appellant said they would talk when she got to his

place. N. asked appellant if what A. had told her was a lie, to which appellant responded, "Yes" and he reiterated that "[n]othing happened with A." At one point when N. asked whether she was "the only one," which she told appellant was a simple "yes or no question," appellant did not answer but said he was "real paranoid" of "[l]ife." N. continued to insist that appellant promise there would be "no more sex, no more touching, no nothing." Appellant eventually promised. Towards the end of the phone call, when N. continued to ask for reassurance that she was "the only one," appellant said he was reassuring her but "don't ask me again."

### Child A.

A. was born in September of 1996 and is N.'s half-sister. Appellant was A.'s stepfather. A. visited her mother and appellant on weekends. Appellant began touching A.'s breasts when she was nine. The first time was when she was lying down on her mother's bed and appellant touched her breasts underneath her shirt. When A. told appellant to stop, he claimed he thought she was her mother.

The next time appellant touched A.'s breast was when she was 10 or 11 years old. He came into her room on a weekly basis while she was sleeping and would leave when she woke up. He mainly touched her breasts outside of her clothing. This touching continued through A.'s 12th birthday.

According to A., appellant also did the following: he asked her to show him her breasts when she was 12 or 13; he always came into the bathroom while she was showering; he set up a video camera in the bathroom to record her undressing; he used the reflective side of a CD slipped underneath the bathroom door to see her in the bathroom; and he apologized for "what he did" to her.

According to Sergeant Lopez, the sheriff's department determined that it would be ineffective for A. to make a pretext phone call to appellant regarding her sexual abuse claims.

***Child T.***

T. was born in 1994. In 2002, T. and N. were friends who lived next door to one another and sometimes spent the night together. One night, when T. was in the second or third grade, she woke up at N.'s to find appellant's mouth on her genitals. Her pants and underpants had been pulled down and appellant was "moving his tongue and licking" her. T. did not remember what happened next. She told her younger sister, but no one else until she was later questioned by her mother.

T. was interviewed about this event by Sergeant Lopez back in 2003, but the taped interview was later destroyed because the district attorney's office had not filed charges and the case had been closed.

***Defense***

Appellant's son, T., Jr., testified that he is five years older than his half-sister N. He lived with appellant, N., A. and others for seven or eight years in one- or two-bedroom houses. N. and A.'s mother was his stepmother. A. did not live with them full time, but visited them on the weekends. Appellant's son acknowledged that he was incarcerated in various facilities when he was 16; he went to juvenile hall for the first time when N. was 11.

According to appellant's son, appellant never molested him, he did not see appellant molest anyone, and he never heard or saw any signs that appellant had had sex with N. or A. He did overhear appellant and his stepmother fight a lot and he overheard his stepmother threaten appellant. Appellant's son testified that N. was "[n]ot really" a "nice girl" at age 15, because she did whatever she wanted, went wherever she wanted, and stayed out all night, which appellant did not like.

Appellant testified in his own behalf and denied molesting N., A., or T. He thought T.'s accusations were the result of a feud he had had with T.'s mother's boyfriend. He denied touching T. inappropriately.

Appellant described his relationship with N.'s mother as "rocky." He claimed their "intimate life" was impacted due to the fact that they lived in various two- or three-bedroom homes with nine or 10 people.

Appellant denied molesting N. or having intercourse with her. By the time N. was 15, appellant had moved out. He described his relationship with N. as "stressed" because she wanted him to come home and he did not approve of her staying out all night or living with her boyfriend.

Appellant moved to Las Vegas in 2010 and lived with his mother. During that time, he spoke to N. once or twice a week by telephone. Appellant claimed that his mother distracted him during the two pretext phone calls N. made. He did not think N. accused him of molesting her or of having sex with her, but that she was talking about someone else when she mentioned sex. Thus, according to appellant, there was no need to deny he ever had sex with her during the calls. He also claimed that when he stated he was "paranoid" during the one call, he was talking about his medical condition of paranoid schizophrenia.

## DISCUSSION

### I. Motion to Sever

Appellant argues the trial court erred when it denied his motion to sever the count involving N. from the counts involving A. and T. We disagree.

### Procedural Background

The People's complaint charged appellant with two counts of continuous sexual abuse of a minor under the age of 14 (§ 288.5, subd. (a) [counts 1 & 2]) and one count of committing a lewd and lascivious act on a minor under the age of 14 (§ 288, subd. (a) [count 3]). Before trial, appellant moved to sever count 1, the charge involving N., from counts 2 and 3, involving A. and T., arguing they were "wholly unrelated" and separate and distinct crimes. He also argued that the status of the victims was different (one his biological child, one a legal relative, and one an unrelated neighbor), that it would be

6.

fundamentally unfair for one trier of fact to determine all the charges, that the case had "sexually violent predator ramifications," and that any judicial economy in trying the charges together did not trump his constitutional rights. The People opposed the motion.

In denying the motion, the trial court stated that it had considered the written points and authorities in support of the motion, as well as argument from counsel, and found that the counts were properly joined as they were offenses "of the same class." The trial court found that "at least some of the evidence would be cross-admissible were these offenses to be tried separately." The trial court also found that it appeared that this was not a situation where "the nature of the evidence or what's alleged to constitute the basis for the offenses is considerably more inflammatory with one alleged set of facts then it is in the others." Instead, the counts, which involved victims in roughly the same age range, were "roughly equivalent." The trial court concluded:

> "So taking all of those factors into consideration, considering that it is more economical judicially for the matters to be tried together, though that is not dispositive in and of itself, it does appear to the Court that it is appropriate to deny the motion to sever any of the counts from the others."

### Applicable Law and Analysis

We review the trial court's denial of a defendant's motion for severance for abuse of discretion (*People v. Stanley* (2006) 39 Cal.4th 913, 934), which occurs only if the trial court's ruling falls outside the bounds of reason (*People v. Soper* (2009) 45 Cal.4th 759, 774 (*Soper*)). As we shall explain, the trial court did not abuse its discretion in denying appellant's motion for severance.

In reviewing a challenge to a denial of a motion to sever charges for trial, we begin with the premise that "[t]he law prefers consolidation of charges." (*People v. Ochoa* (2001) 26 Cal.4th 398, 423, disagreed with on other grounds in *People v. Prieto* (2003) 30 Cal.4th 226, 263, fn. 14; accord *People v. Thomas* (2011) 52 Cal.4th 336, 349-350; *Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220.) Section 954 provides in pertinent part:

> "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated."

Thus, if offenses are "of the same class of crimes," as they are here, the People may charge them in the same accusatory pleading. (§ 954.)

Appellant was charged with two counts of continuous sexual abuse of a minor (§ 288.5, subd. (a)) and one count of committing a lewd and lascivious act on a minor (§ 288, subd. (a)). Two of the charges here were identical, except for the victims; all three allegations share several "common characteristics," inasmuch as they all involved incidents where appellant was charged with sexual misconduct of a minor. (*People v. Lucky* (1988) 45 Cal.3d 259, 276; *Soper, supra,* 45 Cal.4th at p. 771 [charges of same crime against two victims were of same class]; *People v. Poon* (1981) 125 Cal.App.3d 55, 69 [sex offenses against two victims were properly joined].)

Although the statutory requirements for joinder were met, the trial court had discretion to order severance of the charged offenses "in the interest of justice and for good cause shown." (§ 954.) "The burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried." (*People v. Bean* (1998) 46 Cal.3d 919, 938; see also *People v. Stanley, supra,* 39 Cal.4th at p. 934 ["defendant can only predicate error in the denial of severance on a clear showing of potential prejudice"].) This is a heavy burden, for the benefits to the state in conserving judicial resources and public funds "often weigh strongly against severance of properly joined charges," and also give the trial court broader discretion in ruling on a severance motion than it has in ruling on the admissibility of evidence of uncharged offenses in a separate trial. (*Soper, supra,* 45 Cal.4th at pp. 774, 775, fn.7.) Thus, where, as here, charges meet the requirement for joinder, the burden of showing prejudice from denial of a severance motion "'is so great that the courts almost invariably reject the claim of abuse of discretion.'" (*People v. Matson* (1974) 13 Cal.3d 35, 39;

8.

accord *People v. Poon, supra,* 125 Cal.App.3d at p. 69.) Appellant has not met that burden here.

When reviewing a severance motion, reviewing courts generally "'consider the record before the trial court when it made its ruling.'" (*People v. Hartsch* (2010) 49 Cal.4th 472, 493.) In assessing potential prejudice:

> "The factors to be considered are these: (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case." (*People v. Mendoza* (2000) 24 Cal.4th 130, 161; accord, *People v. Zambrano* (2007) 41 Cal.4th 1082, 1128-1129, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Appellant acknowledges that, at the time the trial court denied the severance motion, "it arguably was a proper ruling since all applicable joinder factors discussed in *Mendoza, supra,* seemed to be present." We agree. The evidence regarding A. and T. would be admissible in a separate trial involving N. And the evidence in the counts involving A. and T. was not more serious or inflammatory than the evidence in the count involving N.

However, he argues that, even if the ruling on the motion was correct when made, reversal is required because the "'joinder was so grossly unfair as to deny due process.'" We disagree.

Our Supreme Court has held that "even if a trial court's ruling on a motion to sever is correct at the time it was made, a reviewing court still must determine whether, in the end, the joinder of counts or defendants for trial resulted in gross unfairness depriving the defendant of due process of law." (*People v. Rogers* (2006) 39 Cal.4th 826, 851.) We hold there was no such deprivation here, for several reasons: (1) the evidence of each offense was "'"simple and distinct"'"; (2) there was no great disparity in the nature of the three charges; (3) the trial court instructed the jury that each count charged was a separate

9.

crime the jury had to consider separately and for which it had to return a separate verdict; and (4) the jury found appellant guilty of one charge and not guilty of the other two, indicating that the jury was "'capable of differentiating [among his] various [crimes]'" and that "'no improper spillover effect is evident here'" (*Soper, supra,* 45 Cal.4th at p. 784.)

## II. Imposition of Upper Term

Appellant contends that the trial court abused its discretion when it imposed the upper term of 16 years in state prison, arguing that the trial court improperly relied on a number of factors in doing so. We disagree.

### Procedural Background

Appellant's probation report recommended imposition of the upper term of 16 years. The report cited no circumstances in mitigation and the following circumstances in aggravation: (1) appellant had numerous prior convictions as an adult; (2) his prior performance on misdemeanor probation was unsatisfactory; (3) he took advantage of a position of trust in the instant case; (4) he had engaged in violent conduct which indicated he posed a serious danger to society; and (5) the instant crime involved a high degree of callousness. The report listed appellant's prior criminal convictions from 1990 to 2009, which included various driving violations—driving under the influence (Veh. Code, § 23152, subd. (a))—reckless driving, alcohol or drug related (Veh. Code, § 23103.5, subd. (a)); contributing to the delinquency of a minor (§ 272); causing corporal injury to a spouse or cohabitant (§ 273.5, subds. (a) & (b)); causing willful harm or injury to a child (§ 273a, subd. (b)); and three convictions for battery (§ 243, subds. (a) & (b)).

Appellant filed a personal statement requesting the low term of six years. At sentencing, appellant's counsel asked for the low term of six years, though the 12-year term "may be appropriate," but that the 16-year term was "error."

10.

The trial court, in imposing the upper term of 16 years, stated that it had "full discretion in determining which of the three terms to select," found no circumstances in mitigation, and in aggravation found the following:

> "First, the defendant's previous convictions as an adult are numerous. Some of them are relatively minimal in character, less so. [¶] Second, his previous performance on misdemeanor probation was unsatisfactory in that he violated terms and condition[s] of probation and continued to reoffend. [¶] Third, he took advantage of a position of trust in this matter in that he was a victim's biological father. [¶] Fourth, he engaged in violent conduct which indicates a serious danger to society as evidenced not only by the offense in this case but his previous convictions for violation of Penal Code Sections 243(a) and 273.5(a)/17[b], those being offenses involving violence against a person. [¶] And, fifth, the crime involved a high degree of callousness in that the defendant had sexual intercourse on [a] repeated and extended basis with the victim for a period of several years and engaged in additional sexual conduct previous to that."

### *Applicable Law and Analysis*

A person convicted of violating section 288.5, subdivision (a), may be sentenced to six, 12, or 16 years in state prison. "'Sentencing courts have wide discretion in weighing aggravating and mitigating factors.'" (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.) "[A] trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions. (See, e.g., Cal. Rules of Court, rule 4.420(c)[4] [fact underlying an enhancement may not be used to impose the upper term unless the court strikes the enhancement]; *id.*, rule 4.420(d) [fact that is an element of the crime may not be used to impose the upper term].)" (*People v. Sandoval* (2007) 41 Cal.4th 825, 848, first and second bracketed insertions added.)

In addition, in determining whether to impose the lower, middle, or upper term, the court is not limited to the factors set forth in rule 4.421; rather, any relevant fact may be considered. (*People v. Covino* (1980) 100 Cal.App.3d 660, 671; rule 4.408(a).) It is

---

**4**      All further rule references are to the California Rules of Court.

settled that single factor in aggravation is sufficient to justify the upper term. (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433; *Covino,* at p. 670.)

"'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational and arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.]" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.)

Appellant faults the trial court for relying on his nine prior convictions because they were "all misdemeanors" and his probation violations because they were "apparently not serious." The rules of court, however, do not prevent the trial court from considering misdemeanor convictions. (Rule 4.421(b)(2); see also *People v. Searle* (1989) 213 Cal.App.3d 1091, 1098; *People v. Stuart* (2008) 159 Cal.App.4th 312, 314, fn. omitted [criminal records consisting solely of misdemeanor convictions qualify as aggravating circumstance, making defendant eligible for upper term].) Neither do the rules of court prevent the trial court from considering his unsatisfactory performance on probation. (Rule 4.421(b)(5).) According to the probation report, appellant suffered four violations of probation.

Appellant also contends that, while his conduct may have been violent, it did not indicate "a serious danger to society," (rule 4.421 (b)(1)), but only a possible danger to the victim. Appellant fails to include the fact that he suffered prior convictions for causing corporal injury to a spouse or cohabitant, causing willful harm or injury to a child, and three convictions for battery, which demonstrate that he does pose a serious danger to society.

Appellant next argues that the trial court's reliance on the "'callousness' factor based on 'repeated and extended' sexual conduct" is present in every violation of section 288.5, and therefore, as an element of the offense, cannot be relied upon to impose the

upper term. (Rule 4.420(d).) To prove a violation of section 288.5, continuous sexual abuse of a child, a prosecutor must establish that the defendant, "over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years .…" (§ 288.5, subd. (a).) Here, the evidence was that appellant's abuse of N. extended far beyond the three month duration or the three specified acts of sexual conduct required for a conviction. Given the extent to which appellant sexually abused N., the instant case was "distinctively worse" than the ordinary violation of section 288.5, subdivision (a), and justified the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 817.)

Finally appellant contends that the "violation of trust" relied on by the trial court is inherent in every section 288.5, subdivision (a) conviction and therefore also an element of the offense and cannot be used as an aggravating factor. (Rule 4.420(d).) However, the prosecution need not prove either the victim's vulnerability or that defendant abused a position of trust in order to convict him of continuous sexual abuse. (§ 288.5, subd. (a).)

Accordingly, we find no error in appellant's sentence to the upper term of 16 years in state prison.

### III. Pitchess Motion

Appellant contends that the trial court erred in denying his motion for discovery of peace officer personnel records pursuant to *Pitchess* and requests that this court conduct an independent in camera review of the records to determine if the trial court improperly limited the scope of discoverable records. The People do not object to appellant's request.

Prior to trial, appellant filed a *Pitchess* motion. In it, he sought discovery of police personnel records of Deputy Scott Lopez related to instances of misconduct. The motion alleged that Deputy Lopez authored a report in which he indicated that he responded to a prior child molestation investigation regarding appellant and a different victim in 2003; that when investigating the current case, he told the alleged victims that appellant was

13.

"scum who beat a case just like this one, and I am not going to let him get away with it again"; and that he proceeded to tell the alleged victims to lie about appellant in order to get a current conviction. The trial court held an in camera review and determined that there were no discoverable materials found in the material produced.

In *Pitchess, supra,* 11 Cal.3d 531, the California Supreme Court held that a criminal defendant is entitled to discovery of officer personnel records if the information contained in the records is relevant to the defendant's ability to defend against the charge. Later enacted legislation implementing the court's rule permitting discovery (§§ 832.5, 832.7, 832.8; Evid. Code, §§ 1043-1047) balanced the accused's needs for disclosure of relevant information against a law enforcement officer's legitimate expectation of privacy in his or her personnel records. The Legislature concluded that a defendant, by written motion, may obtain information contained in a police officer's personnel records if it is material to the facts of the case. (Evid. Code, § 1043, subd. (b)(3).) When presented with such a motion, the court rules whether there is good cause for disclosure to the defendant. (Evid. Code, §§ 1043, 1045.) If the court orders disclosure, the custodian of the officer's records brings to court all the potentially relevant personnel records and, in camera, the court determines whether any of the records are to be disclosed to the defense. "A trial court's ruling on a motion for access to law enforcement personnel records is subject to review for abuse of discretion." (*People v. Hughes* (2002) 27 Cal.4th 287, 330; see also *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1086, citing *People v. Samayoa* (1997) 15 Cal.4th 795, 827.)

We have received the sealed documents the trial court reviewed in conducting its *Pitchess* analysis. Having obtained those documents, we note first that the trial court complied with the procedural requirements of a *Pitchess* hearing. There was a court reporter present, and the custodian of records was sworn prior to testifying. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228, 1229, fn. 4; *People v. White* (2011) 191 Cal.App.4th 1333, 1339-1340.) The custodian of records complied with the requirement to bring all

14.

the records and submit them for the court to review and determine which documents were relevant. (*People v. Wycoff* (2008) 164 Cal.App.4th 410, 414-415.)

We also have reviewed the sealed documents and find no reversible error with regard to nondisclosure of those records. (*People v. Hughes, supra,* 27 Cal.4th at p. 330; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## ***DISPOSITION***

The judgment is affirmed.

_____
HILL, P. J.

WE CONCUR:


_____
LEVY, J.


_____
DETJEN, J.