[No. B218065. Second Dist., Div. Six. Jan. 20, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMAL CHARLES WHITE, Defendant and Appellant.

## Counsel

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan Sullivan Pithey, Mary Sanchez and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**PERREN, J.**—The procedures attendant to a criminal defendant's right to discover relevant evidence in confidential peace officer personnel files—through the filing of a so-called *"Pitchess"*[1] motion—are established by both statute and decisional law.[2] The defining hallmark of the process is an in camera hearing in which the trial court reviews the files at issue outside the presence of the defendant and his or her counsel. The completeness of the records is established through questioning of the custodian of records who produced them. In order to protect the defendant's right to a fair trial, the custodian must be placed under oath. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1230, fn. 4 [114 Cal.Rptr.2d 482, 36 P.3d 21] (*Mooc*); Evid. Code, § 710.) In this case we decide whether the trial court's failure to administer the oath in this regard compels a conditional reversal of the judgment. We conclude that it does.

---

[1] (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*).)

[2] (*Pitchess, supra,* 11 Cal.3d at pp. 534–539; Pen. Code, §§ 832.7, 832.8; Evid. Code, §§ 1043–1045; see also, e.g., *Galindo v. Superior Court* (2010) 50 Cal.4th 1 [112 Cal.Rptr.3d 673, 235 P.3d 1]; *People v. Gaines* (2009) 46 Cal.4th 172 [92 Cal.Rptr.3d 627, 205 P.3d 1074]; *Garcia v. Superior Court* (2007) 42 Cal.4th 63 [63 Cal.Rptr.3d 948, 163 P.3d 939]; *Alford v. Superior Court* (2003) 29 Cal.4th 1033 [130 Cal.Rptr.2d 672, 63 P.3d 228]; *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1 [124 Cal.Rptr.2d 202, 52 P.3d 129]; *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74 [260 Cal.Rptr. 520, 776 P.2d 222].)

Jamal Charles White appeals the judgment entered after a jury convicted him of possessing marijuana in a jail facility (Pen. Code,[3] § 4573.6). In a bifurcated proceeding, the trial court found true allegations that appellant had three prior strike convictions (§§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)). Appellant was sentenced to a state prison term of 25 years to life, to run consecutive to the prison term he was currently serving.

Although appellant's opening brief raises no claims of error, he asks us to independently review the sealed transcripts of the in camera hearing on his *Pitchess* motion. In independently reviewing the sealed transcript of the hearing, as we must (see *Mooc, supra*, 26 Cal.4th at pp. 1229–1232), we discovered that the two custodians of records who testified at the hearing were never placed under oath. Because the custodians were never sworn, the records they produced and their statements relating thereto are not "evidence" that can be considered on appeal. Under the circumstances, there is effectively no record of the *Pitchess* hearing for us to review. Accordingly, we shall conditionally reverse the judgment and remand for a new hearing in which the oath is administered to the custodians of records before they testify.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### *The Trial*

On September 30, 2007, appellant was incarcerated at the California Men's Colony. Sometime that morning, he was admitted to the visiting area by Correctional Officer Jeffrey Diaz. Although Officer Diaz did not specifically recall processing appellant that morning, the standard procedure was to verify that the inmate had a visitor, check the inmate's identification, and conduct a patdown search.

At 1:45 p.m., Officer Diaz examined appellant after he exited the visiting area. Pursuant to the standard procedure, the officer searched the visiting area and appellant's clothing, then conducted a strip search of appellant in an adjacent bathroom. After Officer Diaz checked the bathroom to ensure that nothing was already in there, he ordered appellant to bend over, squat, and cough. Appellant bent over but did not squat, and turned his buttocks away from the officer's view. Officer Diaz repeated the command and told appellant to turn his buttocks toward him. After appellant again failed to comply, the officer repeated the command for a third time. As appellant moved his legs to

---

[3] All further undesignated statutory references are to the Penal Code.

squat, a small package fell from his rectum. Officer Randy Smith examined the package and found it consisted of two condoms wrapped in cellophane that contained 40.85 grams of marijuana and cigarette rolling paper. Officer Smith testified that such packaging was common inside the prison, and that it was also common for inmates to utilize their body cavities to smuggle contraband into the prison from the visiting area.

Appellant testified in his own defense. He claimed the marijuana did not belong to him and that it must have been in the bathroom before he was searched. He also denied disobeying Officer Diaz's orders to bend over and squat, and accused the officer of lying.

### The Pitchess *Motion and Hearing*

Prior to trial, appellant filed a *Pitchess* motion seeking discovery of complaints and allegations against Officer Diaz regarding "the use of false reports, dishonesty and the planting of drugs to fabricate probable cause." Appellant also requested production of any exculpatory evidence pursuant to *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]. The motion was based on appellant's representation that Officer Diaz had falsified the charge against him and had either planted the contraband attributed to appellant or knew it belonged to someone else. Appellant sought production of Officer Diaz's personnel records as well as any records maintained on the officer pursuant to section 832.5.[4] Appellant specifically requested the following: "(1) IA [(Internal Affairs)] file; (2) Professional Standards Unit file; (3) Personnel file; (4) Risk Management file; (5) Divisional file; (6) Human Resources file; and (7) any other file maintained by the agency not referenced above containing any personnel information about the officer in question."

The court found that appellant had made the requisite showing of good cause for the requested discovery[5] and proceeded to hold an in camera hearing. The sealed transcript of the hearing reflects appearances by two

---

[4] Subdivision (b) of section 832.5 provides in pertinent part that any complaints brought by members of the public against peace or custodial officers, as well as any reports or findings relating those said complaints, shall be retained for at least five years. All complaints so retained "may be maintained either in the peace or custodial officer's general personnel file or in a separate file designated by the [employing] department or agency as provided by department or agency policy, in accordance with all applicable requirements of law." (*Ibid.*) Subdivision (c) of the statute provides that "[c]omplaints by members of the public that are determined by the peace or custodial officer's employing agency to be frivolous, . . . or unfounded or exonerated, or any portion of a complaint that is determined to be frivolous, unfounded, or exonerated, shall not be maintained in that officer's general personnel file. However, these complaints shall be retained in other, separate files that shall be deemed personnel records for purposes of . . . Section 1043 of the Evidence Code."

[5] This finding is not disputed.

custodians of records: Andrew Pitoniak, Litigation Coordinator for the California Men's Colony, and Suzan Brandt, Personnel Supervisor. Pitoniak and Brandt were accompanied by Deputy Attorney General Ivan Torres, who appeared on behalf of California's Department of Corrections and Rehabilitation (CDCR). At the outset of the hearing, the court stated: "This is on for a *Pitchess* and *Brady* motion . . . . [¶] During the course of the hearing, I am going to be reviewing documents on the record, and if I need some explanation . . . of what the documents are, we may go off the record so they can be explained to me, where they came up, rather than clutter up the record." The court then proceeded to hear from Pitoniak, who stated, "[w]e did do a thorough search of all the different files that can be kept on an employee at our institution. The most common is the personnel file, which we did bring here. [Appellant's] attorney listed a bunch of files that don't exist in our realm of the CDCR, so I really wasn't sure what exactly he was after on some of these issues." Pitoniak added that the only such file that existed was an internal affairs file, which did not contain any information regarding Officer Diaz. Pitoniak also stated that other files that might have been relevant to the request had been searched and that no information regarding Officer Diaz had been found. After further questioning by the court, Pitoniak reiterated that no information regarding Officer Diaz had been found other than his personnel file, which Pitoniak described as "extremely thin."

The court proceeded to question Brandt regarding the contents of Officer Diaz's personnel file. With Brandt's assistance, the court went through each document in the file and determined that none of them contained discoverable information. At the conclusion of the hearing, the court stated, "So having gone through all of these things, there's actually nothing to turn over under either *Pitchess* or *Brady* and their line of cases. [¶] So the transcript[s] of these proceedings are ordered sealed at this time, as I indicated before." The court thereafter resumed open court proceedings and notified appellant that his *Pitchess* motion had been denied.

## DISCUSSION

At appellant's unopposed request, we have independently reviewed the sealed transcript and records produced in response to his *Pitchess* motion. The sealed transcript of the hearing reflects that the court made a clear and detailed record of the contents of the file that was presented for its review. (*Mooc, supra*, 26 Cal.4th at p. 1229.) Moreover, the court did not abuse its discretion in finding that appellant was not entitled to discover any of the documents contained in the file.

The record discloses, however, that the court failed to administer the oath to the two custodians of record who appeared at the in camera hearing. (*Mooc, supra,* 26 Cal.4th at pp. 1229–1230, fn. 4.) After considering supplemental briefing on the issue, we conclude that the judgment must be conditionally reversed and remanded for a new *Pitchess* hearing in which the custodians of record are sworn prior to testifying.

■ Evidence Code section 710 provides that every witness over the age of 10 who is competent "shall take an oath or make an affirmation or declaration in the form provided by law." This section governs " '. . . all proceedings conducted by California courts except those court proceedings to which it is made inapplicable by statute. . . .' [Citation.]" (*Jauregi v. Superior Court* (1999) 72 Cal.App.4th 931, 939 [85 Cal.Rptr.2d 553]; see Evid. Code, § 300.)

■ Our Supreme Court has recognized, albeit in dicta, that the oath requirement embodied in Evidence Code section 710 applies to the custodians of records who testify at *Pitchess* hearings. In *Mooc, supra,* 26 Cal.4th 1216, the court concluded that the custodian of records who appears at the hearing is not required to produce the peace officer's entire personnel file for the trial court's review, but rather need only bring "those documents in [the officer's] file that were potentially responsive to [the] defendant's specific request." (*Id.* at p. 1230.) The court added, however, that "if the custodian has any doubt whether a particular document is relevant, he or she should present it to the trial court." (*Id.* at p. 1229.) Moreover, "[t]he custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion. A court reporter should be present to document the custodian's statements, as well as any questions the trial court may wish to ask the custodian regarding the completeness of the record." (*Ibid.*)

In concluding that the entire personnel file need not be produced, the court also rejected the Court of Appeal's suggestion that the department responsible for producing the documents at issue "cannot be trusted to turn over to the trial court all potentially relevant evidence." (*Mooc, supra,* 26 Cal.4th at pp. 1229–1230, fn. 4.) The court reasoned: "Although the statutory scheme contemplates the trial court will be the entity that decides what information should be disclosed in response to a defendant's *Pitchess* motion, we agree with the City Attorney that whether or not the Department's obligation is to

provide the entire personnel file or just that portion of the record it deems potentially responsive to a defendant's *Pitchess* motion, an unscrupulous custodian could always remove evidence that reflected unfavorably on a peace officer. A criminal defendant would thus not be much better protected by a strict rule requiring production of an officer's entire personnel file in every case." (*Ibid.*) The court further reasoned "that criminal defendants are protected by the fact that a representative of the custodian of records is placed under oath before responding to a trial court's questions during the in camera inspection of records. In addition, a criminal defendant who learns that relevant documents were improperly withheld may move for a new trial pursuant to Penal Code section 1181, subdivision 8, or seek relief by filing a petition for a writ of habeas corpus." (*Ibid.*)

■ As *Mooc* demonstrates, administering the oath to the custodians of records who testify at *Pitchess* hearings is necessary to establish the accuracy and veracity of the custodians' representations regarding the completeness of the record submitted for the court's review. (*Mooc, supra,* 26 Cal.4th at pp. 1229–1230, fn. 4.) The integrity of the custodian's testimony in this regard is also necessary to ensure that "the locus of decisionmaking" at the hearing "is to be the trial court, not the prosecution or the custodian of records." (*Id.* at p. 1229.)

■ The People do not dispute that the trial court erred in failing to administer the oath to the two custodians who appeared and testified at appellant's *Pitchess* hearing. They contend, however, that the error is harmless because (1) Officer Diaz's entire personnel file was produced for the court's review, and (2) appellant cannot demonstrate prejudice. Neither point is persuasive. In the absence of an oath, the People's assertion that the officer's entire personnel file was produced merely begs the question. Appellant cannot be expected to demonstrate prejudice because neither he nor his representative was present at the hearing and he has had no other opportunity to seek or obtain discovery regarding Officer Diaz's employment. Moreover, appellant's motion did not merely identify the officer's personnel file. Section 832.5, which appellant expressly referenced in his motion, defines a category of potentially discoverable documents that, if they existed, would not have been included in the personnel file. The court's finding that no such documents existed was based entirely on Pitoniak's unsworn testimony to that effect. "[U]nsworn testimony does not constitute 'evidence' within the meaning of the Evidence Code." (*In re Heather H.* (1988) 200 Cal.App.3d 91, 95 [246 Cal.Rptr. 38]; see *In re Zeth S.* (2003) 31 Cal.4th 396, 413–414, fn. 11 [2 Cal.Rptr.3d 683, 73 P.3d 541].) Under the circumstances, the record does not support the court's ruling.

In *People v. Gooch* (1983) 139 Cal.App.3d 342 [188 Cal.Rptr. 673], the defendant moved to disclose the identity of a confidential informant under Evidence Code section 1042. After conducting an in camera hearing at which the informant gave unsworn testimony, the court denied the motion. In reversing for a new hearing on the matter, the Court of Appeal reasoned: "There was no oath ever administered to the informant here. Cases cited by respondent in which there is claimed some defect either in administration of the oath to a witness or in the assent of the witness are thus distinguishable. In addition, neither appellant nor his counsel was present at the *in camera* hearing. Under these circumstances there can be no waiver imputed to defendant of the fundamental requirement that a witness be sworn before questions are answered, if the answers are to be given any weight by the trier of fact." (*Id.* at p. 345.) The court concluded: "Appellant is entitled to have the trial court make the determination on the question of whether or not the identity of the informant should be disclosed based on sworn testimony from the informant and whatever other evidence the People wish to present *in camera*." (*Ibid.*)[6]

■ We reach a similar conclusion here. The defendant in *Gooch* sought to discover the identity of a confidential informant under Evidence Code section 1042, while appellant sought discovery of citizen complaints against his arresting officer under Evidence Code section 1043. Both motions were brought in the proper exercise of the defendant's right to prepare and present a defense, and were adjudicated outside the defendant's presence. (See *People v. Prince* (2007) 40 Cal.4th 1179, 1284 [57 Cal.Rptr.3d 543, 156 P.3d 1015] ["[A] defendant's right to discovery is intended to ensure a fair trial and an informed defense . . . ."].) The integrity of both procedures contemplates a judicial decision based on sworn testimony. It is apparent that appellant, like the defendant in *Gooch*, was deprived of such a decision. Under the circumstances, no other finding of prejudice can or need be shown.

## DISPOSITION

The judgment is conditionally reversed. The cause is remanded to the trial court with directions to hold a new *Pitchess* hearing in which any witnesses who testify are placed under oath. If the trial court finds there are discoverable records, they shall be produced and the court shall conduct such further proceedings as are necessary and appropriate. If the court finds there are no

---

[6] The same rationale was applied in reversing a juvenile court order declaring a minor to be a dependent child of the court based on unsworn testimony given by the minor's sibling at an in camera hearing. (*In re Heather H., supra*, 200 Cal.App.3d at pp. 95–97.) After that decision was filed, Evidence Code section 710 was amended to except children under the age of 10 from the oath requirement.

discoverable records, or that there is discoverable information but appellant cannot establish that he was prejudiced by the denial of discovery, the judgment shall be reinstated as of that date. (See *People v. Wycoff* (2008) 164 Cal.App.4th 410, 416 [78 Cal.Rptr.3d 907].)

Gilbert, P. J., and Coffee, J., concurred.