Filed 1/21/16  P. v. Logan CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B260406 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA427485) |
| v. | |
| MARCUS ANTHONY LOGAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mildred Escobedo, Judge.  Affirmed.

Miriam K. Billington, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Marcus Anthony Logan appeals from a judgment entered after a jury convicted him of one count of assault by means likely to cause great bodily injury in violation of Penal Code section 245, subdivision (a)(4)[1] and after the court found to be true that Logan suffered four prior prison terms pursuant to section 667.5, subdivision (b). He was sentenced to a middle term of three years on count 1, plus one year for each of the four prior prison term enhancements, for an aggregate term of seven years.

On appeal, Logan contends that the court committed reversible error when it refused to give a self-defense instruction. Logan also requests that we conduct an independent review of the trial court's in camera *Pitchess*[2] hearing.

We affirm.

### FACTS AND PROCEEDINGS BELOW

On April 9, 2014, Logan and the victim, Darnell Clarke, were inmates in the general population at Los Angeles Men's Central Jail. Los Angeles County Sheriff Deputy Jonathan Harris was on duty in a module of the jail which housed inmates in single-man cells and was overseeing the "program" in which inmates are allowed to leave their cells to use the telephone, shower and walk in a designated area called the "tier." The program in that module consisted of opening four cell doors at a time—releasing two inmates from their cells to begin their allotted time on the tier, while two inmates returned to their cells having finished their allotted time on the tier.

At approximately 3:30 p.m., Deputy Harris was in the officer safety cage and used the cell door controls to open the cell doors for Clarke and Logan to exit their cells and for Devon Wright and another inmate to return to their cells. While the fourth inmate returned to his cell, Wright did not and instead stayed outside his cell, turning to watch Clarke and Logan exit their cells. Deputy Harris saw Clarke exit his cell and go directly

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

to the telephones that were located about five feet from the officer safety cage. Logan "came from behind [Clarke] and struck him in the back of the head" with a closed fist. Before being hit, Clarke was looking at the phones and did not turn around to see what was behind him. After the first hit, Logan continued to hit Clarke and Clarke turned around to defend himself. Wright arrived and joined Logan in punching Clarke all over Clarke's body, head and face. Deputy Harris estimated that Logan and Wright each punched Clarke 10 times. At some point, it looked like Clarke's knees and body went limp and Wright was holding Clarke from behind while Logan continued to punch Clarke. It did not "appear like [Clarke] was able to defend himself anymore."

Deputy Harris commanded everyone to stop fighting, but the inmates did not comply, and Deputy Harris called for backup. Deputy Harris moved away from his view of the fight to operate the door controls to close the still open cell doors. Wright ran back towards his cell and Deputy Harris and other officers reached Clarke and Logan. Clarke had swelling in multiple areas of his face that were swollen, including his eye, his nose appeared flattened, and his lip bloody. Deputy Harris tried to question Clarke for the investigation, but Clarke was unable to answer questions, appearing dazed and confused. According to Deputy Harris's report, Logan and Wright were uninjured.

On cross-examination, Deputy Harris stated that he saw Clarke hit back, but then stated he did not see Clarke make contact. Clarke is larger than Logan. On redirect, Deputy Harris stated that Clarke tried to defend himself by blocking and trying to get away and he did not see Clarke "land" any punches on Logan or Wright.

Registered nurse Louiejay Tumanda treated Clarke and testified based on his notes that Clarke was "alert and oriented" and reported being hit on the nose, which had no visible swelling and non-active bleeding. X-rays were ordered for the following day and Clarke was prescribed a painkiller.

The defense presented no evidence.

Outside the presence of the jury, defense counsel requested that the trial court instruct the jury on self-defense. The trial court denied the request, stating that there was

no evidence of self-defense, let alone substantial evidence, reflecting that the instruction was allowable.

The jury convicted Logan on count 1, assault by means likely to produce great bodily injury under section 245, subdivision (a)(4). After a court trial on his prior convictions, Logan was sentenced to a middle term of three years in state prison on count 1, plus one year for each of the four section 667.5, subdivision (b) enhancements, for an aggregated sentence of seven years.

Logan filed a timely notice of appeal.

## DISCUSSION

On appeal, Logan contends that the trial court erred when it refused to give a jury instruction on self-defense. Logan also requests that we conduct an independent review of the trial court's in camera *Pitchess* hearing.

### I. Jury Instruction on Self-Defense

"A defendant is entitled to instruction on request on any defense for which substantial evidence exists. [Citations.] However, the trial court need give a requested instruction concerning a defense only if there is substantial evidence to support the defense." (*People v. Miceli* (2002) 104 Cal.App.4th 256, 267.) Substantial evidence means "evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist." (*People v. Blair* (2005) 36 Cal.4th 686, 744-745.) If the evidence is minimal and insubstantial, the trial court need not instruct on the defense. (*People v. Flannel* (1979) 25 Cal.3d 668, 684 & fn. 12 [it is not the case that "jury instructions must be given whenever *any* evidence is presented, no matter how weak"], overruled on another ground in *In re Christian S.* (1994) 7 Cal.4th 768, 777.) "The trial court is not required to present theories the jury could not reasonably find to exist." (*People v. Oropeza* (2007) 151 Cal.App.4th 73, 78.) We review the trial court's determination de novo and independently decide whether there was substantial evidence in the record to support the requested instruction. (*People v. Alvarez* (1996) 14 Cal.4th 155, 217.)

4

Here, defense counsel did not specify which self-defense instruction he was requesting. To support a general self-defense instruction under section 245 there must be substantial evidence that the defendant (1) actually and reasonably believed that he was in imminent danger of being killed or suffering great bodily injury; (2) reasonably believed that the immediate use of force was necessary to defend against that danger; and (3) used no more force than was reasonably necessary to defend against that danger. (CALCRIM No. 3470; *People v. Romero* (1999) 69 Cal.App.4th 846, 853.) To support a self-defense instruction during mutual combat, the defendant has a right to self-defense only if (1) he actually and in good faith tried to stop fights; (2) he indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand that he wanted to stop fighting and that he had stopped fighting, and (3) he gave his opponent a chance to stop fighting. (CALCRIM No. 3471.)

Here there was no substantial evidence of self-defense generally or during mutual combat. As to self-defense generally, there was no evidence suggesting that when Logan hit Clarke from behind that Logan actually and reasonably believed he was in imminent danger from Clarke, who had left his cell to go directly to the telephones, away from Logan. The fact that Deputy Harris did not see or hear any interaction between Clarke and Logan as the cell doors were being opened is unsurprising as the two would have been separated in their single-man cells prior to their release for the program and the subsequent attack. Moreover, this lack of evidence is the opposite of the kind of substantial evidence from which a reasonable jury could conclude that Logan acted in self-defense. As to self-defense during mutual combat, first there is no evidence that the fight was a mutual combat to which Clarke had consented given that the evidence was that Logan hit Clarke from behind as Clarke was walking away from Logan's direction, and second, there was no evidence in the record that Logan actually and in good faith tried to stop fighting. Rather, the evidence was that Logan and Wright each hit Clarke approximately 10 times and that at one point Wright held Clarke up while Logan continued to punch Clarke.

Accordingly, we find no error in the trial court's refusal to instruct on self-defense.

5

## II.     *Pitchess* **Motion**

Before trial, Logan made a *Pitchess* motion for discovery of, inter alia, all "complaints . . . [of] fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, . . . false arrest, perjury, dishonesty, writing of false police reports, writing of false police reports to cover up the use of excessive force, planting of evidence, false or misleading internal reports including but not limited to false overtime or medical reports, and any other evidence of misconduct amounting to moral turpitude . . . against Deputy Jonathan Harris (Employee #600699)."

The trial court granted in camera review of the records of Deputy Harris for false reporting. No relevant complaints were ordered disclosed.

On appeal, Logan requests that we independently review the in camera proceedings to determine whether the trial court properly exercised its discretion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1232.)

The record indicates that the court complied with the procedural requirements of a *Pitchess* hearing. There was a court reporter present and the custodian of records was sworn prior to testifying. (*People v. Mooc*, *supra*, 26 Cal.4th at pp. 1228-1230, fn. 4; *People v. White* (2011) 191 Cal.App.4th 1333, 1339-1340.)

We have conducted an independent review of the transcript and the documents, and find no error occurred during the *Pitchess* hearing in chambers.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


CHANEY, J.

We concur:


ROTHSCHILD, P. J.          JOHNSON, J.

6