Filed 2/25/25  P. v. Weir CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ZACHARY WEIR,<br><br>    Defendant and Appellant. | D083055<br><br><br>(Super. Ct. No. SCE411629) |

APPEAL from a judgment of the Superior Court of San Diego County, Sherry M. Thompson-Taylor, Judge.  Affirmed.

Debra A. Postil, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Anastasia Sagorsky, Deputy Attorneys General, for Plaintiff and Respondent.

Zachary Weir appeals from a judgment sentencing him to two years of imprisonment following his conviction for grand theft (Pen. Code,[1] § 487, subd. (a)) and the subsequent revocation of probation for that offense. The court revoked Weir's probation after finding he failed to report to a probation office on June 9, 2023, as directed.

Weir contends the judgment must be reversed because the record lacks substantial evidence showing he willfully violated his probation. We disagree and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 2022, Weir pleaded no contest to felony grand theft for stealing a bicycle (§ 487, subd. (a).) He was sentenced to two years of formal probation and 213 days in county jail with credit for time served. The court ordered him to report to probation within 72 hours of release from custody and specifically admonished him that failure to do so could be a violation of probation.

A. *Prosecution Evidence*

Deputy Probation Officer M.A. testified that Weir was released on May 26, 2023, and remained subject to the condition that he report to probation within 72 hours. Taking into consideration the intervening weekend and holiday, Probation Officer M.A. said Weir was required to report by June 1, 2023, at 5:00 p.m. Weir did not report, and a probation officer submitted a warrant request.

On June 2, 2023, Weir went to the Ohio Street probation office. Because the warrant had not yet been signed by a judge and did not show as outstanding in the probation department's computer system, a probation

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

2

officer told Weir to report to the probation department on Ohio Street on June 9, 2023.

Weir did not timely appear at any probation department. The court signed the warrant on June 9, 2023, and Weir was arrested on the outstanding warrant the next day.

B.   *Defense Evidence*

Representing himself, Weir elicited evidence from two additional probation officers. When Weir asked M.R. whether she had ever been given permission to allow a probationer to report later than the date assigned, M.R. said no and that she would not change the assigned date "unless there [was] some form of communication."

Eduardo O. testified that he met with Weir on June 2 and checked him in as having completed his 72-hour check-in. He did not see a warrant application in the database at that time. He provided Weir with bus passes to Ohio Street and directed him to report at 2:00 p.m. on June 9.

DISCUSSION

Weir contends the court's finding that he violated probation was not supported by substantial evidence because the evidence did not show he willfully failed to appear on June 9. In his view, the court demonstrated a misunderstanding of the law by finding a probation violation even though the prosecution did not sustain its burden to show that the violation was willful.

A.   *Legal Principles*

"[T]he court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of their supervision . . . ." (§ 1203.2, subd. (a).) The standard of proof in a probation revocation proceeding is a

3

preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447 (*Rodriguez*).) Courts have "very broad discretion in determining whether a probationer had violated probation." (*Id.* at p. 443.)

" 'The discretion of the court to revoke probation is analogous to its power to grant the probation, and the court's discretion will not be disturbed in the absence of a showing of abusive or arbitrary action. [Citations.]' " (*People v. Urke* (2011) 197 Cal.App.4th 766, 773 (*Urke*).) " '[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation . . . .' " (*Rodriguez, supra,* 51 Cal.3d at p. 443 quoting *People v. Lippner* (1933) 219 Cal. 395, 400.)

We review the trial court's factual findings for substantial evidence. (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318.)

B.    *Analysis*

It is undisputed that Weir did not report to the Ohio Street probation office as ordered on June 9, 2023.[2] Accordingly, there is substantial evidence of a technical probation violation.

Weir nonetheless argues his failure to appear for the appointment was not "willful" and, thus, cannot support the revocation of his probation. He points to his explanation at the hearing that he could not report to probation because his bicycle and his bag, which contained the bus passes, were stolen. Weir had also mentioned that he was trying to use an identification fee waiver form to get an identification card because he needed an identification card to get a phone. Without a phone, he said he had no way of keeping track

---

[2]    The court did not consider Weir's failure to report on June 1, 2023 to be a violation and gave him "the benefit of the doubt." Because the parties do not challenge this decision on appeal we do not address whether Weir violated the terms of his probation on June 1.

4

of time. He also told the court he had tried to obtain assistance from an officer on June 10, 2023, at which point he was taken into custody.

"[T]he burden of demonstrating an abuse of the trial court's discretion rests squarely on the defendant" (*Urke, supra*, 197 Cal.App.4th at p. 773), and we conclude Weir has not met his burden here. As an initial matter, these statements were not made under oath and were not subject to cross-examination. "Every witness before testifying shall take an oath or make an affirmation or declaration in the form provided by law." (Evid. Code, § 710.) " 'Evidence' means testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." (Evid. Code, § 140.) " '[U]nsworn testimony does not constitute "evidence" within the meaning of the Evidence Code.' " (*People v. White* (2011) 191 Cal.App.4th 1333, 1340.) Thus, it does not appear Weir's statements about his bike and bag should be considered as evidence.

Nonetheless, we acknowledge it is not clear how the court took these statements. In response to repeated objections by the prosecution that these facts were not in evidence, the court stated, "This is argument. I will give him some latitude. He would choose to testify. Right now all of this would come in under the evidence code of him testifying." Additionally, in its ruling, the court acknowledged that circumstances prevented Weir from reporting but said these circumstances were relevant to his sentence, not to whether he violated probation.

However, even assuming the court viewed Weir's statements as evidence, it is apparent that by finding a violation and revoking his probation, the court implicitly rejected Weir's arguments that his failure to report was not willful. Substantial evidence supports this assessment of his excuse. Weir claimed he had not been able to obtain a phone because he did

5

not have identification.[3] He said probation gave him the bus passes when he reported on June 2, 2023, so that he could get an identification card. But, by his own statements, he still had not gone to obtain an identification card a week later. Thus, his failure to remain cognizant of the time or to call the probation office was unrelated to the theft of his bike and the bus passes. Furthermore, he undermined his own story of not having a phone or a way to get to wherever he needed to go to obtain identification by then stating that he plugged in his phone at City College on June 10, 2023. Notably, even when he supposedly plugged in his phone the next day, he did not call the probation department. And, of course, none of this explains why he did not make a collect call to the probation office to explain the situation or approach a police office for assistance on June 9, instead of on June 10.

Weir argues it was the prosecution's burden to apparently overcome his arguments and demonstrate that his violation was willful under these circumstances. We are not persuaded.

Weir relies on *People v. Zaring* (1992) 8 Cal.App.4th 362 (*Zaring*) and *People v. Galvan* (2007) 155 Cal.App.4th 978 (*Galvan*). In *Zaring*, the court revoked the defendant's probation because she arrived 22 minutes late to a hearing. (*Zaring,* at pp. 366–367.) At a subsequent proceeding, the defendant explained in sworn testimony that her childcare plan fell through the morning of the hearing so her mother-in-law, who was to be her ride to court, had to drop Zaring's children off at school before driving Zaring to the courthouse. (*Id.* at pp. 367, 376.) The court concluded Zaring had willfully violated the terms of her probation by not appearing on time and sentenced her to prison time. (*Id.* at pp. 367, 377.)

---

[3] Weir only stated that his bike and bag were stolen. The court seemingly misunderstood and added that his bag "had your phone and bus passes."

On appeal, the reviewing court explained that the exercise of the court's discretion in revoking probation "requires the application of sound judgment that takes into consideration that life is not always predictable and that things do not always go according to plan." (*Zaring, supra,* 8 Cal.App.4th at p. 379.) The court noted that Zaring "was confronted with a last minute unforeseen circumstance as well as a parental responsibility common to virtually every family" and concluded that "[n]othing in the record supports the conclusion that her conduct was the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court." (*Ibid.*) Given that Zaring faced "last minute circumstances," was only 22 minutes late to court, and still undertook to drive "some 35 miles from her home to the courtroom," the appellate court determined that it could not "in good conscience" find the evidence supported the conclusion that Zaring willfully violated a probationary condition to be on time, assuming that was indeed a condition of the court's order. (*Ibid.*) Accordingly, the court found the lower court had abused its discretion. (*Ibid.*)

In *Galvan*, the defendant was ordered to report to probation within 24 hours of his release from custody but failed to do so. (*Galvan, supra,* 155 Cal.App.4th at p. 982.) Galvan argued it was impossible for him to report because the federal government immediately deported him. (*Id.* at p. 983.) Therefore, he asserted that his failure to report was not willful. (*Ibid.*) Relying on *Zaring*, the reviewing court concluded the trial court abused its discretion in revoking probation because "Galvan's failure to report was not 'the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court,' nor did it 'constitute[ ] a willful violation of [his probation] condition.' " (*Galvan*, at p. 985.)

We find these cases distinguishable.  As an initial matter, the showing required by the statute when revoking probation is only a finding that "the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of their supervision . . . ." (§ 1203.2, subd. (a).)  Here, the prosecution presented evidence to meet that standard.  Specifically, it offered testimony from a probation officer that Weir was told in person on June 2 that he had to report on June 9 to the Ohio Street probation office and that he did not appear.

The defendants in *Zaring* and *Galvan* presented their lack of willfulness as a defense or excuse.  In finding that the respective defendants had not willfully violated probation, the *Zaring* and *Galvan* courts accepted their impossibility defenses and relied in large part on the fact that the defendants' behavior was not irresponsible, contumacious, or disrespectful.

The same cannot be said of Weir.  Even if the court accepted his excuses as evidence and as true, this evidence shows he did not utilize the resources provided to him to obtain a phone in a timely manner, did not check the time elsewhere, and did not call the probation office collect or contact a police officer *before* the deadline to seek advice on his lack of transportation.  Further, whereas Zaring reported later the same day, Weir waited until sometime *the next day* to seek help from an officer.  He also was not physically restrained in the way Galvan was such that he could not take any action to attempt to comply.  In other words, the prosecution had no additional duty to overcome this evidence, presuming the court even accepted it as such, because Weir did not provide sufficient evidence that he was physically or reasonably prevented from reporting.  Likewise, on these facts,

8

the court was well within its discretion to impliedly find Weir acted irresponsibly.[4]

Accordingly, we conclude the court did not abuse its discretion in revoking Weir's probation.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

IRION, J.

RUBIN, J.

---

[4] Weir also cites to *People v. Barker* (2004) 34 Cal.4th 345, *People v. Sorden* (2005) 36 Cal.4th 65, and *People v. Cox* (2002) 94 Cal.App.4th 1371 for the similar proposition that a defendant's inadvertent failure to register as a sex offender, whether due to forgetfulness, depression, or lack of transportation, does not meet the legal standard of "willfulness" required for a violation.  These cases do not aid Weir.  First, unlike here, the relevant statute in these cases expressly required a finding that the violation was willful.  (See § 290, subd. (g)(2), subsequently renumbered as § 290.018, subd. (b), Stats. 2007, ch. 579, § 26, eff. Oct. 13, 2007.)  Second, all three cases rejected the conclusion that forgetting to register was an excuse (*Barker*, at p. 358; *Sorden*, at p. 72; *Cox*, at p. 1377) and, although the defendant in *Cox* presented a defense regarding lack of transportation, the court did not address it (*Cox*, at pp. 1373–1375).