Filed 2/17/26  P. v. Becher CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JASON BECHER,<br><br>    Defendant and Appellant. | G064377<br><br>(Super. Ct. No. 16WF2885)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge. Affirmed.

Melissa Hill, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Eric A. Swenson and Tyler L. Krentz, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Jason Becher of first degree murder and found true the special circumstance of lying-in-wait. (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(15).)[1] In a bifurcated proceeding, the court found prior strike (§§ 667, subds. (d) & (e)(1), 1170.12, subds. (b) & (c)(1)) and prior serious felony conviction (§ 667, subd. (a)(1)) allegations to be true. The court sentenced defendant to life in prison without the possibility of parole for the murder conviction and a five-year term for the prior serious felony conviction.

In an unpublished opinion, we conditionally reversed the judgment and remanded the matter to the trial court with directions to hold a new *Pitchess* hearing regarding one officer's records.[2] (*People v.* Becher (May 1, 2023, G060372) [nonpub. opn.] (*Becher*).) We directed the court to personally review the records or obtain a list of their contents and confirm the conclusion of the custodian of records. (*Ibid.*) We also directed the court to reinstate the judgment if there was no discoverable evidence or defendant was not prejudiced from the denial of discovery. (*Ibid.*)

On remand, the trial court held another *Pitchess* hearing and independently reviewed the entirety of the officer's internal affairs investigation file and personnel file. The court then ordered disclosure of identifying information for one witness and later determined there was no prejudice to defendant for not receiving the information prior to trial.

On appeal, defendant argues the custodian of records at the *Pitchess* hearing held on remand was not neutral and may not have provided all relevant documents. He therefore requests we reverse the matter for a

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

new *Pitchess* hearing with a different custodian of records. He alternatively requests we review the *Pitchess* hearing to determine if the trial court properly questioned the custodian or abused its discretion by denying any additional discovery.

For the reasons *infra*, we need not remand for another *Pitchess* hearing. The custodian of records was not an improper custodian, and our review of the in-camera hearing reveals no abuse of discretion by the trial court. The judgment is accordingly affirmed.

STATEMENT OF FACTS

I.

THE UNDERLYING INCIDENT

We incorporate by reference our statement of facts from our unpublished opinion in the prior appeal. (*Becher*, *supra*, G060372.) In short, defendant murdered the victim with whom he had a relationship. (*Ibid.*)

II.

THE FIRST *PITCHESS* HEARING

"Before trial, defendant moved to discover the personnel records of Detective Steve Wickser. (*Pitchess, supra*, 11 Cal.3d 531.) Defendant sought records from the police department personnel files concerning, among other things, "lack of credibility," "falsifying police reports," "prior acts involving moral turpitude," and information pursuant to *Brady v. Maryland* (1963) 373 U.S. 83. The court found good cause to review Wickser's files (*People v. Samuels* (2005) 36 Cal.4th 96, 109) and conducted an in-camera review ([Evid. Code,] § 1045, subd. (b)) but found no discoverable items (see *People v. Mooc* (2001) 26 Cal.4th 1216, 1226-1232 (*Mooc*))." (*Becher*, *supra*, G060372.)

In a prior appeal, we reviewed the sealed transcript of the in-camera hearing. (*Becher*, *supra*, G060372.) "The court placed the custodian of records for the Huntington Beach Police Department under oath in the presence of counsel for the City of Huntington Beach. The custodian stated he had one file from Wickser's internal affairs investigation file. The court asked if anything was removed from that file, and the custodian said he was not aware of anything being removed. The custodian also generally described what is included in an officer's personnel file and the internal affairs investigation file. The custodian then provided the records falling within the parameters of the request. The court examined the files with the custodian on the record and identified the documents it reviewed. The court found no discoverable documents. Although the court reviewed the documents from the internal affairs investigation file, it did not question the custodian about what records were present in Wickser's personnel file or what records had been reviewed to reach the conclusion that no documents in the personnel file were responsive." (*Ibid.*)

We conditionally reversed the judgment and remanded for the trial court to conduct a new *Pitchess* hearing where it had to personally review the records or obtain a list of their contents and confirm the conclusion of the custodian of records. (*Becher*, *supra*, G060372.) If the court found there was discoverable evidence, we noted it then had to determine if defendant was prejudiced from the denial of discovery. (*Ibid.*) If the court found no discoverable evidence or that defendant was not prejudiced from the denial of discovery, the judgment would be reinstated. (*Ibid.*)

4

## III.

## THE *PITCHESS* HEARING ON REMAND

In September 2023, the trial court held a further *Pitchess* hearing on remand.[3] Counsel for the City of Huntington Beach and Sergeant Daniel Quidort, the custodian of records for the Huntington Beach Police Department, were present. The court placed Quidort under oath and questioned how the Huntington Beach Police Department investigates and maintains records of complaints made against a police officer. Quidort explained how the department investigates a complaint and retains records.

Quidort next stated he had a file from Wickser's internal affairs investigation. The court asked if Quidort had removed anything from the file, and he said he had not. The court also asked if anything generally had been removed from the file, and Quidort said he was not aware of anything being removed. The court then reviewed the entirety of the file and described every document.

After reviewing the internal affairs investigation file, the court turned to Wickser's personnel file. The court asked if Quidort had removed anything from the file, and he said he had not. The court also asked if anything generally had been removed from the file, and Quidort said he was not aware of anything being removed. The court proceeded to review the entirety of the personnel file and described every document.

The court ordered disclosure of identifying information for a witness. It otherwise found no discoverable items.

---

[3] Judge Sheila Hanson handled the proceedings on remand and was not involved in the original *Pitchess* hearing. Judge Hanson also presided over the underlying jury trial.

## IV.

### DEFENDANT'S OBJECTION TO THE CUSTODIAN OF RECORDS

The day after the *Pitchess* hearing, defendant objected to the court's reliance on Quidort as the custodian of records. Defendant argued Quidort was not neutral and instead had "an obvious and unavoidable entanglement in the prosecution of the . . . case." Among other things, defendant noted Quidort testified in the underlying trial and was the prosecution's investigating officer.

In January 2024, the court held a hearing to rule on defendant's objection. Defendant's counsel again emphasized Quidort was an investigating officer in the case. She also noted the Huntington Beach Police Department had paid to unlock the victim's phone, which was "unusual and new." She speculated this was because the police "felt personally invested in the prosecution of [defendant] because of . . . [their] prior failures" to arrest him for domestic violence in the months before he murdered the victim.

After hearing argument from both parties, the court overruled defendant's objection and found Quidort was an appropriate custodian of records. First, the court emphasized Quidort was placed under oath. Second, the court believed he was credible in his answers to the court's questions. The court found it significant that Quidort's responses were consistent with those of a different custodian in earlier proceedings. Both Quidort and the prior custodian provided the same answer when asked about allegations of misconduct or any prior misconduct involving Wickser. Third, the court noted it "went into detail with . . . Quidort to ensure . . . [the court] knew precisely how any such complaint, whether generated from a citizen outside of the department or inside, would be documented, retained, and investigated." Fourth, the court spent "nearly six hours to review every single page in"

6

Wickser's personnel file, "including every personnel evaluation of . . . Wickser for the entire time period of which he was a police officer with the City of Huntington Beach." The court accordingly concluded: "[T]here were no other discoverable responsive documents within the personnel file itself, nor was there any indication that there was ever any additional information that would have been in existence at any time during Wickser's life, even beyond that five-year period or any period."

V.

THE HEARING REGARDING PREJUDICE

In June 2024, the court held a hearing to determine whether defendant was prejudiced from the denial of discoverable evidence prior to trial. At the outset, the court reiterated that Quidort was an appropriate custodian of records because "it is the province of the chief of police of Huntington Beach Police Department to make assignments of their officers in the manner in which they choose, and the fact that . . . Quidort had now been transferred to that role was not something that [the court] could change."

The court next noted it had ordered disclosure of identifying information for a witness who claimed to have seen "an accident in a parking lot, and the individual [Wickser] didn't leave a note." But the court concluded there was no prejudice to defendant for not receiving the witness' identifying information prior to trial.

First, the court explained defendant already had relevant information before trial. Defendant previously received the witness's name with a different surname and a different address, but defendant had the same phone number for the witness. The substance of what the witness said was also documented in a police report, which was provided to defendant before trial.

7

Second, the court held none of the information would be admissible at trial. Because Wickser never testified at trial, evidence regarding moral turpitude would not have been relevant to his credibility as a witness. Although defendant suggested the evidence might show Wickser somehow failed to do his job, the court held an allegation of misdemeanor hit-and-run had little to no probative value as to whether Wickser appropriately collected evidence. Even assuming the allegation had any probative value, the court indicated it would have been inadmissible under Evidence Code section 352. Having found no prejudice to defendant, the court reinstated the judgment.

## DISCUSSION

Defendant argues the matter should be remanded for a new *Pitchess* hearing where a different custodian of records produces Wickser's files. He insists Quidort was an improper custodian because he shared investigative duties with Wickser in the underlying case and testified against defendant at trial. He adds that defense counsel had insinuated Quidort and Wickser were negligent in their investigation of the case. According to defendant, "It would have been only human nature for . . . [Quidort] to have some degree of emotional investment in the affirmance of . . . [defendant's] conviction." In the alternative, defendant requests this court review the *Pitchess* hearing conducted on remand to determine if the trial court sufficiently questioned Quidort and identified all discoverable materials.

We disagree with defendant's contentions. Quidort was not an inappropriate custodian of records, and our independent review of the in-camera hearing reveals no abuse of discretion.

# I.

## APPLICABLE LAW AND STANDARD OF REVIEW

A defendant seeking discovery from a peace officer's personnel records must file a motion and "identify the proceeding, the party seeking disclosure, the peace officer, the governmental agency having custody of the records, and the time and place where the motion for disclosure will be heard." (*Mooc, supra*, 26 Cal.4th at p. 1226.) The motion must describe the information sought and include affidavits showing good cause for the discovery. (*Ibid.*)

If the trial court finds there is good cause, "the custodian of records should bring to court all documents 'potentially relevant' to the defendant's motion." (*Mooc, supra*, 26 Cal.4th at p. 1226.) The court must administer an oath to the custodian in order "to establish the accuracy and veracity of the custodians' representations regarding the completeness of the record submitted for the court's review." (*People v. White* (2011) 191 Cal.App.4th 1333, 1340.) "The integrity of the custodian's testimony in this regard is also necessary to ensure that 'the locus of decisionmaking' at the hearing 'is to be the trial court, not the prosecution or the custodian of records.'" (*Ibid.*) "The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive . . . ." (*Mooc*, at p. 1229.)

The court examines the information in chambers in the presence of "'the person authorized [to possess the records] and such other persons [the custodian of records] is willing to have present.'" (*Mooc, supra*, 26 Cal.4th at p. 1226.) The court also must "make a record of what documents it examined." (*Id.* at p. 1229.) Subject to certain exceptions, the court must

9

"disclose to the defendant 'such information [that] is relevant to the subject matter involved in the pending litigation.'" (*Id.* at p. 1226.)

A trial court has broad discretion in ruling on a *Pitchess* motion, and its ruling will not be disturbed absent an abuse of discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.)

## II.

### QUIDORT AS CUSTODIAN OF RECORDS

Here, the trial court did precisely what the law requires and what we directed on remand. The court placed Quidort under oath and questioned him about how the Huntington Beach Police Department investigates and maintains records of complaints against police officers. The court also questioned whether Quidort or anyone had removed anything from Wickser's internal affairs investigation or personnel files. After confirming nothing had been removed from the files, the court personally reviewed every document at the in-camera hearing.

Defendant's concern that Quidort was not neutral overlooks the procedural safeguards built into the *Pitchess* process. The core safeguard of the *Pitchess* process is independent judicial review. The trial court—not the custodian of records—bears responsibility for determining what materials are relevant and discoverable. (*Mooc, supra,* 26 Cal.4th at p. 1229.) The custodian of records is responsible for producing the officer's records. (*Id.* at pp. 1228–1229.) Defendant cites no law, and we are aware of none, requiring the custodian to be uninvolved in the underlying investigation or trial.

Our Supreme Court has acknowledged "an unscrupulous custodian could always remove evidence that reflected unfavorably on a peace officer." (*Mooc, supra,* 26 Cal.4th at p. 1229, fn. 4.) Given this risk, a "defendant would thus not be much better protected by a strict rule requiring

10

production of an officer's entire personnel file in every case." (*Ibid.*) The court emphasized city attorneys are "officers of the court" and "defendants are protected by the fact that a representative of the custodian of records is placed under oath before responding to a trial court's questions during the in camera inspection of records." (*Ibid.*) The court further noted a defendant "who learns that relevant documents were improperly withheld may move for a new trial pursuant to . . . section 1181, subdivision 8, or seek relief by filing a petition for a writ of habeas corpus." (*Ibid.*)

Our Supreme Court later explained: "In every case, *accepting the custodian's representations concerning what is in a personnel file will be, at bottom, a credibility determination for the trial court*, regardless of whether the custodian produces what purports to be the entire file in court, produces only what purport to be the potentially responsive documents, or produces what purport to be the potentially responsive documents and specifies on the record what nonresponsive documents were omitted." (*People v. Fuiava* (2012) 53 Cal.4th 622, 647–648.)

As noted *ante*, the trial court placed Quidort under oath and later stated he was credible, noting his responses were consistent with those of a different custodian in earlier proceedings. We have no basis to second-guess that determination.

Defendant's reliance on other authorities is misplaced. Code of Civil Procedure section 170.1 addresses grounds for disqualification of a judge, and California Rules of Court, Standards of Judicial Administration, rule 10.20 addresses a court's duty to prevent bias and ensure the judicial system is impartial. The latter authorities say nothing about the role of a custodian in a *Pitchess* proceeding. Section 1424 addresses conflicts of interest warranting disqualification of a prosecutor, not a custodian charged

11

with locating and producing an officer's records. Sections 13510.8 and 11102.2 pertain to suspension of a peace officer's certification and a program maintained by the California Department of Justice to process fingerprint-based criminal record background clearances on individuals designated by agencies as custodians of records. The latter statutes do not impose any requirement that a *Pitchess* custodian be uninvolved in the underlying investigation or trial.

Finally, we have reviewed the sealed reporter's transcript of the in-camera hearing, and the trial court did not abuse its discretion by denying discovery of information beyond identifying information for one witness. The documents examined by the court are also adequately identified, and nothing in the record suggests Quidort failed to provide potentially discoverable material.

## DISPOSITION

The judgment is affirmed.

SANCHEZ, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

DELANEY, J.

12